IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| LOIS L. WALSH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 07-06131-CV-SJ-NKL-SSA |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

# ORDER

Pending before the Court is Plaintiff Lois L. Walsh's ("Walsh") Social Security Complaint [Doc. # 1]. Walsh seeks judicial review of the Commissioner's denial of her request for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. The Administrative Law Judge ("ALJ") found that Walsh was not entitled to benefits and such determination became the final decision of the Commissioner when the Appeals Council denied Walsh's request for review. Walsh has exhausted her administrative remedies, and jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g). The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] Because the Court concludes that the ALJ failed to adequately consider Walsh's severe impairments, this matter is remanded to Defendant for further consideration.

---

[1] Portions of the parties' briefs are adopted without quotation designated.

1

**I.      Factual Background**

Walsh was born on June 3, 1953 and worked various jobs throughout the past decade, including jobs as a bookkeeper, clerical worker, counselor, payroll worker and receptionist. (Tr. 132). Most recently, Walsh worked at Heatron Air & Cooling from August 13, 2004 until March 7, 2005, when she claims she discontinued work due to hardened heart wall, diabetes, high blood pressure and depression. (Tr. 124-25). Walsh began working again on May 24, 2005 as a part-time receptionist. Walsh discontinued working again on June 21, 2005, due to headaches, abdomen and back pain, diabetes related nausea and depression. (Tr. 137-38). Soon after leaving her work as a part-time receptionist, Dr. Seth Sullivan, M.D., ("Dr. Sullivan"), one of Walsh's treating physicians, prescribed her Cymbalta, an anti-depressant. (Tr. 138). On July 5, 2005, Walsh complained to Dr. Sullivan that her depression and suicide ideation continued. *Id.* Dr. Sullivan then referred Walsh to the St. John's Emergency Room with symptoms of depression and suicide ideation with plans.

On July 21, 2005, Walsh applied with the Social Security Administration ("SSA") for disability insurance benefits. Walsh claimed she was disabled due to a hardened heart wall, diabetes, high blood pressure, back pain, fatigue, and depression. (Tr. 42). Along with the application, Walsh submitted five statements from friends and family members attesting to her disabling condition. (Tr. 90-120). On November 7, 2005, SSA had Consultative Psychologist Louis Tom Bein, M.D. ("Dr. Bein") examine Walsh. (Tr. 408). Dr. Bein diagnosed Walsh with Major Depressive Disorder, Recurrent, In Partial

2

Remission. *Id.* He further stated that "The summary is she has been experiencing a depression, which is related to her deteriorating physical condition." (Tr. 141). On November 18, 2005, State agency physician Glen D. Frisch ("Dr. Frisch") noted in a Psychiatric Review that "The claimant has a medically determinable impairment as described above. Her mental allegations are supported at mild to moderate severity." (Tr. 456). On November 30, 2005, the SSA informed Walsh that she did not qualify for benefits on her claim because she is "capable of doing work that is less demanding."

On February 1, 2006, Walsh requested a hearing by an Administrative Law Judge ("ALJ"). On September 14, 2007, following the hearing, the ALJ found that Walsh was not under a "disability" as defined by the regulations. The ALJ did not find that depression was a severe impairment. Rather, the ALJ stated, "The record shows that the claimant has had a history of depression for which she takes Lexepro [sic] but does not receive any ongoing counseling or therapy." (Tr. 19). Regarding the opinions of Walsh's treating physicians and statements from friends and family, the ALJ noted, "[T]here is a conflict in the record. Specifically, the Administrative Law Judge has considered the opinions from the claimant's treating physician . . .which, if found to be entirely credible, would be consistent with a finding of disability." (Tr. 20). On November 9, 2007, the Appeals Council of the Social Security Administration Denied Walsh's request for a review.

## II. Discussion

To establish that she is entitled to benefits, Walsh must show that she was unable to engage in any substantial gainful activity by reason of a medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d) and § 1382c(a)(3)(A).

### A. The ALJ Failed to Identify All of Walsh's Severe Impairments

Despite the impairments diagnosed by Dr. Sullivan, Dr. Frisch, and Dr. Bein, and the statements submitted to SSA by Walsh's family and friends, the ALJ did not find that Walsh's depression was a severe impairment within the meaning of the Social Security regulations. (Tr. 16-22).

In the Eighth Circuit, for an impairment not to be considered "severe" within the meaning of the Social Security regulations, it can have "no more than minimal effect on [a] claimant's ability to work." *Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1996). In this case, Dr. Sullivan diagnosed Walsh with depression along with her other physical diagnoses. Dr. Sullivan sent Walsh to the hospital emergency room for her depression and suicidal thoughts. Both Dr. Bein and Dr. Frisch noted Walsh's mental limitations in their SSA reviews. Walsh's medical records suggest that her depression specifically inhibited her from performing everyday activities that she was formerly able to do. (Tr. 141). Given the evidence that Walsh's depression prevented basic life activities, it was unreasonable for the ALJ to find that the fact that she had not undergone counseling or therapy meant the depression was not severe. Failure to get specialized treatment for depression, standing alone, does not mean the depression has no impact on a claimant's

4

ability to work. *See Assel v. Astrue*, 2008 U.S. Dist. LEXIS 42836 (W.D. Mo., May 30, 2008).

### B. The ALJ Failed to Assign Proper Weight to the Medical Evidence

A treating physician's opinion is generally given controlling weight. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). Dr. Sullivan was Walsh's treating physician for the time period at issue. In this case, the ALJ erred in failing to discuss the weight accorded to Walsh's treating physicians, especially Dr. Sullivan. Because the ALJ failed to discuss the weight accorded to Walsh's treating physicians (or lack thereof), the ALJ erred in determining Walsh's RFC.

The Commissioner claims that the failure to further discuss to Walsh's emotional or mental limitations is excused because Walsh's lack of counseling or therapy indicates that her mental limitations are nonsevere. *Williams v. Sullivan*, 960 F.2d 86, 89 (8th Cir. 1992). In *Williams*, the Eighth Circuit determined that a history of taking a mild anti-anxiety medication for "situational" anxiety was insufficient to establish severe anxiety. Here, Walsh has sought treatment for her depression through her treating physicians. Walsh has a diagnosis of depression, prescription medication, Lexapro and Cymbalta, consistent with those diagnoses and a history of hospitalization for her condition. Similarly, the Eighth Circuit's decisions in *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) and *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1992) are inapposite. In *Roberts* and *Dixon*, the Eighth Circuit concluded that a history of working with an alleged impairment, with no deterioration, was evidence that it was not severe. Here, Walsh was

5

hospitalized for suicide ideation with plans shortly after she quit working. The ALJ did not discuss the impact of the admission to the hospital for depression and suicidal thoughts in her decision to deny Walsh's benefits. The Eighth Circuit Court of Appeals requires an ALJ to consider all evidence in the record when determining a claimant's residual functional capacity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217-18 (8th Cir. 2001) (citation omitted). In determining Walsh's RFC, the ALJ only passingly considered Walsh's depression. Contrary to the Commissioner's claim, Walsh had received "ongoing" treatment by a mental health professional to the extent that she had received a diagnosis and treatment for depression in the past and both her own testimony and that of her family and friends confirmed that it was a diagnosis that required development. "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)). In this case, there is no alternative evidence to support the ALJ's disregard of Dr. Sullivan's diagnosis of depression.

### C. The ALJ Failed to Properly Evaluate Walsh's RFC

The ALJ did not properly formulate her RFC finding. The ALJ failed to properly ascertain whether Walsh is capable of performing his past relevant work as she actually performed it. *Bowen v. City of New York*, 476 U.S. 467 (1986). Although Walsh depends on Social Security Ruling ("SSR") 82-62, which provides that the ALJ must discuss the mental and physical demands of the claimant's past work, the more applicable regulation

is SSR 96-8p which requires that in evaluating an applicant "closely approaching advanced age," the ALJ must first determine whether the applicant can do past relevant work *as he or she actually performed it*, and if they cannot, the ALJ must then determine whether the work can be done as it is generally performed in the national economy. The record shows that the ALJ did not inquire as to how Walsh actually performed her past work. Rather, the record shows that the ALJ based her decision in large part on the evaluation of the vocational expert, Marianne Lumpe, that Walsh could perform her past work as a payroll clerk, bookkeeper or secretary "as it is traditionally performed." (Tr. 813). Although the ALJ inquired as to Walsh's work "as performed or as nationally performed," the record does not show whether Lumpe was testifying as to Walsh's past work as those jobs are performed in the national economy or as Walsh actually performed it. *Id.* The ALJ asked Lumpe of her opinion based on assumed characteristics, and not those specific to Walsh as she actually performed her past work. A failure to first make a function-by-function assessment of the individual's limitations or restrictions could result in the adjudicator overlooking some of an individual's limitations or restrictions. SSR 96-8p. This could lead to an incorrect use of an exertional category to find that the individual is able to do past relevant work as it is generally performed and an erroneous finding that the individual is not disabled. *Id.* Because the record is void of substantial evidence bearing on the question of how Walsh actually performed her past relevant work, the Court must remand the question back to the ALJ.

**III.   Conclusion**

Because the ALJ did not properly determine Walsh's RFC and failed to take into account Walsh's mental limitations, including her difficulty with depression, the decision of the Commissioner is reversed and the matter is remanded for a new administrative hearing where a proper RFC is to be determined, consistent with this order.

Accordingly, it is hereby

ORDERED that Walsh's Petition [Doc. # 1] is GRANTED. The decision of the Commissioner is REVERSED and the case is REMANDED with instructions.

s/ NANETTE K. LAUGHREY  
NANETTE K. LAUGHREY  
United States District Judge

Dated: August 25, 2008
Kansas City, Missouri